# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VAL RAJIC, ) | |
|         Plaintiff, ) | |
| ) | No. 09 CV 1241 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| JPMORGAN CHASE & CO., ) | |
|         Defendant. ) | |

## MEMORANDUM AND ORDER

After Bank One merged with defendant JPMorgan Chase, plaintiff Val Rajic contends that JPMorgan not only terminated him, but also wrongfully denied him stock options to which he was entitled. He has sued to recover the value of the stock options he was allegedly denied. Both Rajic and JPMorgan have filed motions for summary judgment. For the reasons detailed below, Rajic's motion is denied, while JPMorgan's motion is granted.

## I.  BACKGROUND

The following facts are undisputed except where noted. Rajic began working as a relationship manager for Bank One's insurance division in 2003. The terms and conditions of his employment were set forth in an Offer Packet dated February 6, 2003. Under the terms of the Offer Packet, Rajic's compensation included 15,000 Bank One stock options, which were set to vest at a rate of 20% annually. *See* Offer Packet, attached to Appendix to Joint Statements of Material Fact [53-1], at A033-34.

The options were governed by terms and conditions set out in both the Bank One Corporation Stock Performance Plan, as well as the Bank One Corporation Terms and Conditions of March 3, 2003 Stock Option Award ("Award Summary"). Under the Change in Control provision of the Award Summary, the options would vest fully (rather than at a rate of

20% annually) in the event that both of the following events occurred: (1) the control of Bank One changed through a merger or similar event, and (2) "the termination of the employee's employment initiated by the Corporation for any reason other than cause (as defined in the Termination for Cause section above) within two years following the Change in Control." Award Summary, attached to Appendix to Joint Statements of Material Facts [53-1], at A041. According to the Award Summary, "'[t]ermination of employment' occurs on the date the employee ceases to be classified by the Corporation as an employee." *Id.* at A009. For purposes of determining whether an employee had been terminated within two years of a Change of Control, JPMorgan considered an employee terminated on "the last date an employee receives his or her regulatory salary and benefits before beginning to receive severance benefits." Plaintiff's Response to Defendant's Rule 56.1(a) Statement of Material Facts [50-1] at 1.[1]

The Award Summary also gave the CEO of Bank One the authority to make "final and binding" determinations about employees' vesting rights under the Stock Performance Plan. Specifically, the Award Summary stated that:

> The Plan is administered by the Committee, which has delegated its authority to the Chief Executive Officer of the Corporation to administer this Award, including, without limitation, the power to (i) interpret the Plan and the terms of this Award Summary; (ii) determine the reason for termination of employment and application of the restrictive covenants; and (iii) decide all claims arising with respect to this Award. Any determination by the Chief Executive Officer will be final and binding on all parties.

---

[1] The court acknowledges that Rajic denied this statement of fact. However, the denial was nonresponsive in that it did not address how JPMorgan computed an employee's termination date, but rather merely stated that Rajic was terminated on June 27, 2006. Accordingly, the denial is unsupported and JPMorgan's statement of fact is deemed admitted. *See* Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

*Id.*

On July 1, 2004, the control of Bank One changed when it merged with JPMorgan Chase. Nearly two years later in April 2006, Steve Hague (who appears to have been Rajic's supervisor, though Rajic never identified Hague's title) told Rajic that JPMorgan was selling the insurance division in which Rajic worked and, therefore, JPMorgan was eliminating his position.[2] Rajic contends that beginning in April 2006, his job duties dwindled and, ultimately, Hague directed him to surrender all company owned items in his possession. Consistent with Hague's directive, on June 27, 2006, Rajic returned all of the company equipment in his possession, including his laptop computer, his Blackberry, his office keys, his employee badge, and his company credit card. His last day at work was June 27, 2006, and he never returned to the office or performed any of his job duties after that date.

On July 3, 2006, Rajic received written notice from JPMorgan that his "position will be eliminated and your employment will be terminated on 08/31/2006." Letter of July 3, 2006, attached to Appendix to Joint Statement of Material Facts [53-1], at A043. Rajic continued receiving his regular salary and other benefits through August 31, 2006.

---

[2]The court acknowledges that JPMorgan objected to several of Rajic's statements of fact. However, at least two of the objections are not well-founded. First, in response to Rajic's statement that JPMorgan employee Steve Hague told him in April 2006 that his job was being eliminated, JPMorgan objected that Hague's statements were hearsay. However, when speaking on behalf of JPMorgan, Hague's statements are admissions of a party opponent which, by definition, are not hearsay and, therefore, the objection is overruled. *See* Fed. R. Evid. 801(d)(2). Second, in response to Rajic's statement that he never performed his job duties for JPMorgan after June 27, 2006, and returned all of his company equipment on that date, JPMorgan responded that Rajic "remained employed with JPMorgan," and admitted only that Rajic "contends that he returned" his company equipment. Such statements are nonresponsive and, therefore, the corresponding statements of fact are deemed admitted. *See* Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

At the time of the events at issue, Rajic had 7,920 outstanding unvested stock options. On August 9, 2006, Rajic wrote to JPMorgan to request that those 7,920 options vest immediately. Despite his request, on August 31, 2006, JPMorgan cancelled all of Rajic's outstanding options. On September 11, 2006, Rajic contends that he received a telephone call from Stephen Cerrone (Rajic does not identify Cerrone's job title) telling him that the options would not be restored and would remain cancelled. On May 1, 2007, JPMorgan director of human resources John Bradley sent Rajic a letter to confirm that the CEO of JPMorgan had determined that the conditions of the Change in Control provision of the Summary Award had not been met and, therefore, Rajic's options had not fully vested. Rajic then sued JPMorgan for breach of contract for violating the terms and conditions of the Offer Packet, seeking the value of the cancelled options which, according to Rajic, is $195,263.64.

The parties have filed cross-motions for summary judgment. Rajic argues that he is entitled to summary judgment because JPMorgan breached the Offer Packet by failing to fully vest his options when it terminated him on June 27, 2006, less than two years after Bank One merged with JPMorgan. For its part, JPMorgan argues that it is entitled to summary judgment because under the terms of the Award Summary, Rajic was not terminated until August 31, 2006, and, therefore, it did not breach the Offer Packet by failing to fully vest Rajic's options.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *See Valenti*, 970 F.2d at 365; *see also Anderson*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson* 477 U.S. at 248.

### B. JPMorgan's Motion for Summary Judgment

JPMorgan argues that it fully complied with the terms of Rajic's Offer Packet and, therefore, it is entitled to summary judgment on Rajic's breach of contract claim. The court begins by examining what is not in dispute. The parties agree that the 15,000 options that Rajic was granted under the Offer Packet were subject to the terms of the Stock Performance Plan. Based upon the reference in the Offer Packet to the Stock Performance Plan, the parties appear to also agree that the Offer Packet incorporates the terms of the Stock Performance Plan, as summarized in the Award Summary. Therefore, in determining the terms of the Offer Packet that JPMorgan allegedly breached, the court will incorporate the terms of the Award Summary.

Under the Award Summary, Rajic was entitled to full vesting of his options only if JPMorgan terminated his employment less than two years after the July 1, 2004, merger. Rajic contends that he is entitled to full vesting because he was terminated on June 27, 2006, the date on which he turned in all of his company-owned equipment, including his employee badge, and was no longer permitted to perform his job duties. However, under the terms of the Award Summary the date of termination is determined not by when an employee turns in his badge or stops working, but rather "'[t]ermination of employment' occurs on the date the employee ceases to be classified by the Corporation as an employee." Award Summary, attached to Appendix to Joint Statements of Material Fact [53-1], at A037. The relevant event, then, is not when Rajic stopped working, but when JPMorgan no longer "classified" him as an employee. The only evidence on point is JPMorgan's second statement of material fact, in which it states as follows:

> For purposes of determining whether an employee has satisfied the second requirement of the Change of Control provision—"the termination of the employee's employment initiated by the Corporation for any reason other than cause . . . within two years following the Change in Control,"—JPMorgan uses the last date an employee receives his or her regular salary and benefits before beginning to receive severance benefits as the date of termination("Termination Date")."

Defendant's Rule 56.1(a) Statements of Material Fact [44-1] at 1-2 (citing the Declaration of Sharon Szczepankowski). As discussed above, Rajic denied the statement of fact, but his denial was nonresponsive because it did not address when JPMorgan considers an employee to be terminated. Instead, the denial merely stated conclusorily that Rajic was terminated on June 27, 2006. Accordingly, the court deems admitted JPMorgan's statement that it considered an employee terminated on that last date the employee received pay.

It is undisputed that the date for which Rajic was last paid was August 31, 2006. Accordingly, based on the undisputed facts, the facts deemed admitted, and the court's interpretation of the Award Summary, the "termination of the employee's employment," as that phrase is used in the Award Summary, occurred on August 31, 2006, the date for which Rajic was last paid and the date on which JPMorgan no longer considered him to be an employee. Because the termination occurred more than two years after the July 1, 2004, merger, Rajic was not entitled to full vesting under the terms of his employment agreement and, therefore, JPMorgan is entitled to summary judgment on his breach of contract claim.

Nevertheless, Rajic contends that he is entitled to immediate vesting of the balance of his options because he accepted "a lower salary, so long as I was to receive additional stock options." Rajic Affidavit, attached as Exhibit 1 to Plaintiff's Appendix [48-1] ¶ 4. However, Rajic *did* receive the negotiated stock options, which vested at a rate of 20% per year, the precise manner called for in Rajic's Offer Packet. Accordingly, Rajic has already received the stock options to which he is entitled under the Offer Packet and his argument that Offer Packet entitles him to even more is unavailing.

### C. Rajic's Motion for Summary Judgment

Because the court has already determined that JPMorgan is entitled to summary judgment on Rajic's breach of contract claim, Rajic's motion for summary judgment on that same claim is denied.

### III. CONCLUSION

For the reasons stated, JPMorgan's motion for summary judgment [42-1] is granted, while Rajic's motion for summary judgment [45-1] is denied. The clerk is directed to enter a Rule 58 judgment in favor of JPMorgan and to terminate this case from the court's docket.

ENTER:

DATE:  June 23, 2010                    _____
                                        Blanche M. Manning
                                        United States District Judge